My name is Philip Rockenauf. I'm here on behalf of Appellant, the mother of two young children whose habitual residence is at issue in this case. With the Court's permission, I would like to reserve just one minute for rebuttal. You may. Thank you. May it please the Court, the District Court's order should be reversed for three reasons. First, the parties here never abandoned the United States as the habitual residents of the children. The record does not support a conclusion otherwise, and the District Court could not have and did not find otherwise. Second, and notwithstanding the abandonment issue, the objective facts in this record simply do not demonstrate that the children's lives here had become so firmly embedded in Singapore that taking them out of there would be tantamount to taking them out of the family and social environment in which their lives had developed. It had not. And third, if the District Court's order here is upheld, the result will be contrary to the underlying policy and the purpose behind the hate convention. The real decision here is not whether it would be in these children's best interest to spend the next year with their father, with their mother, and particularly where. The real decision is which courts, Singapore's or the United States, which family courts get to rule in the interests of these children. The courts in the US where these children were born, where the couple met and married, where they're citizens, where they hold jobs, property, and have extended family and financial ties, or the courts in Singapore, the connections to which are attenuated and are limited to the father's temporary employment there. There are no other connections to Singapore. There's no family. There are no friends. And there are no ties other than this brief employment period. Indeed, in open court, before the District Court, the father actually expressed his willingness to participate in family proceedings in Massachusetts. What's our standard of review of the District Court's decision? Thank you, Your Honor. The standard review here is de novo. We do not challenge the findings of the fact that the District Court made. We do believe that they're incomplete and there were additional findings that were necessary in order to evaluate the abandonment prong of the analysis. But the District Court found that the father's employment in Singapore was temporary for three years through June of 2015. We have no problem with that finding because that is the fact. The District Courts did not go further to analyze the party's intent with respect to abandoning the United States. Well, let me then follow that a step further. If your complaint is, or one of your complaints, is that the findings of fact are incomplete, if we agree with that, what relief are you entitled to? Shouldn't we remand this to the District Court to get complete findings? Well, forgive me for perhaps misspeaking, Your Honor. It's not that the findings are incomplete, but we believe that the findings of the District Court warrant a different conclusion. There were no additional facts that the District Court needed to find, and there is no need for an additional record to be developed. But your argument is that the District Court made no finding as to whether or not the parties had abandoned Massachusetts as the place of habitual residence. I would submit, Your Honor, that the finding of abandonment is a legal ruling, but the subsidiary facts that would be required for that ruling were before the District Court, and the District Court articulated many of those facts in its order. And what we have an issue with is the result of those findings. So, in particular, the District Court ruled that the parties had agreed that the Singapore situation would be for three years, and the three years were not up. I mean, your argument, in essence, as I understand it, is that the District Court confused habitual residence with residence, and said, yep, parties have agreed to live in Singapore for three years, the three years isn't over, therefore Singapore is the place. Yes, Your Honor, that's correct. So, let me briefly touch upon each of the three points that I articulated. So, again, this is a case that involves more than one potential habitual residence for the two very young children. There's really no dispute that the initial habitual residence was the United States. The parties met here, married here, established a life here, and until they traveled to Singapore in June of 2012 for the three-year assignment, there is just no question that the United States is the place where this family was physically and legally residing. Now, in order for... Don't they own property here also? They own two properties in Boston. What's the nature of that property? Does the record reflect that? Yes, Your Honor, they're both, and this is an undisputed fact, they're both residential condominiums, one of which the parties lived in until the moment they traveled to Singapore. The other they actually purchased about two weeks before leaving to Singapore. They intended to live in one of the properties and to rent out the other as some investment income. The plan was, and this is not disputed either, was that there would be residential tenants, each under one-year leases that they would renew as they went along in these properties, and when the parties returned to the U.S., they would move back into one of them. The husband's employment in Singapore, is it subject to any particular written document? There... I don't want to go outside the record. It's in the record. There is nothing in the record about a written document with respect to his employment, but again, the district court found... You say there isn't? There is not, Your Honor, no. There is not a written document, but the district court did make a finding of fact that the father's employment was for three years. There is one written document. It's not a document from the father's employer, but it's a letter that the mother, with father's knowledge, sent to her employer in May and March, excuse me, of 2013 before there was a dispute here within the family, and that's at A14 and 15 of our appendix, and that letter states to the Boston Public Schools, where mother had worked for many years, that upon my husband's employer temporarily relocated our family to Singapore. Upon completion of the three years, I intend to resume my job with an hour return to the United States. I intend to resume my job with the Boston Public Schools. That document, which the father actually attached to his petition, is one of the most clear pieces of objective evidence in this case. It's not he said, she said. It's a letter that the family sent to the mother's employer stating her intent to resume work in Boston upon the family's return from the temporary stint. So the other facts in this record, again, that are either found by the district court or are otherwise undisputed that support our position, that the father, who is a Danish citizen, not a Singapore citizen, he's a Danish citizen who had lived in Boston since about 1999, he has made efforts, great efforts, to obtain permanent residency status in the United States. He obtained a green card and, absolutely independent of this dispute in February of this year, returned to the United States, met with his immigration attorney, and took steps to ensure that the U.S. status would not be affected by his temporary time in Singapore. There are no immigration or residency ties to Singapore. The family is indisputably there on what's called an employment pass. It's a temporary pass issued by the Singapore government where a particular person can work there and his or her dependents can live with him there, but nothing else. The district court appeared to place considerable weight on her finding that the children had become acclimatized to Singapore. Would you like to tell us your view on that? Yes, thank you, Your Honor. So two things on that point. First, we believe that as a matter of law, the finding of acclimatization should not be given, if any, should not be given great weight here where the parents never had a shared, settled intent to abandon the prior place of habitual residence. But notwithstanding that, we don't think that the facts on this record demonstrate acclimatization. All that we have here with respect to Singapore is one child, three years old, briefly attending what's called an edu-play class with the mother. It's a parent-accompanied playtime activity class. The entire time in Singapore the children were with their mother. And I will stop here and reserve my one minute. Very well. Thank you. Ms. Gibbs, good morning. Good morning, Your Honor. May it please the Court, Lord Gibbs on behalf of the appellee Peter Moeller-Nairgaard. The issue before the district court was the habitual residence of two young children. Did the district court make any explicit finding as to abandonment of the prior habitual residence? The district court's findings of fact, which were based on the record, dealt with evidence that led to that conclusion. In other words – That's not my question. Is there any explicit finding by the district court that – this couple, at the time they met and married, had a settled habitual residence which was in the United States? Our case law has said you can't have a second, a further, a future habitual residence until you abandon the first one. I read Judge Zobel's opinion. I saw no explicit finding of abandonment of the United States habitual residence. I've asked you, am I mistaken in that reading of her opinion? She does not use the word abandonment. What she does say is here it is clear that, at a minimum, the parties agreed to move to Singapore for three years. But that's not an abandonment of habitual residence if that's all they agreed to. It is if you look at the evidence that supports the decision to move.  He secures a job, which all the case law indicates is evidence of abandonment. But the cases that you've cited are cases where someone goes out and secures a job in another country. This is a man whose employer relocated him for three years. That's a little different than going looking for a job in another country. Yes and no. What happened was he actually has a Singapore-based employer. In other words, the entity that pays him is Abenicio Private Limited Software, which is a Singapore-incorporated entity. It issues a different pay to him than the headquartered entity in Lexington, Massachusetts. I saw that in your briefing, and I was a little confused because I thought the same thing, that he worked here, was transferred. Is it just a different corporate entity under the same umbrella? They're all related because Abenicio was his employer when he worked in Massachusetts. It's a Lexington-headquartered entity. But he's actually employed by a Singapore entity that pays him in Singapore dollars and provides him with Singapore health insurance. But it's essentially the same employer. They may be two different corporations, but they're part of the same enterprise. The headquarters is based in Lexington. However, his employer is a Singapore-incorporated entity. But do you expect it to come back? No, we don't. And there is no evidence of that, actually. There is evidence of that. We've heard the letter that's in the record that he agreed to go to Singapore for three years. That's the agreement. And Judge Sobel says that as well. Her letter says, her letter drafted. So what her affidavit says is, in early 2013, the marriage had broken down, and she communicated that to friends and family and then obtained a consult with an attorney in early 2013. Then the evidence shows that on March of 2013, and the reason why I think that date is important is because if you look at the record attached to her affidavit, Appendix 192 and 193, the letter from Boston Public Schools is dated November 19, 2012. Boston Public Schools, which she admits is one of the reasons why they were returning to the United States, asked her to respond by December 15, 2012, or no later than January 15, 2013. And she doesn't do that. In fact, there's silence until March 16, 2013, when she sends a letter that says that the family has relocated to Singapore, and she uses the word relocate. And then she says, at the end of his contract, an hour return to the United States. Now she's speaking to her Boston-based employer and saying that she intends to return in June of 2015. Well, she doesn't say she, she says our. She says our family, but it's evidence of her intent. He didn't countersign it. There's no evidence on the record that he read it, reviewed it, or approved it. He was aware of it. That is, that is true. But then what's, what's equally important is the email correspondence that then comes within three short months after that in June, where she says, I agree to move to Singapore, but because life abroad is different, and I quote, this is Appendix 199, I want to move back to the U.S. And in that same email chain, which disputes the claim that they intended to move back to the U.S., she says, we considered living abroad after the three-year period was up, among other places, London and Copenhagen. So the same statement, and by the way, in her affidavit, she says, I have never lived abroad. My suggestion is that it's not credible when she says that they had an agreement to return to the United States. And indeed, the hearing transcript repeatedly on page 23 and 27. All right, excuse me. This, this relocation took, took place when, 2012? June of 2012. Okay. As of June of 2012, what's the evidence in the record that this was other than a three-year relocation? There's no evidence other than that it was a three-year relocation. Okay. But that does invitiate that habitual residence is in Singapore. Well, sure, because if the parties moved to fulfill a three-year commitment, all right, all right, with no settled purpose of abandoning their Massachusetts residence, they kept their residential property in Massachusetts. They rented it? Yeah, they rented, they rented one-year leases on both parcels. Correct. All right? They kept their bank accounts. She kept her job. Excuse me. She kept her job, her job in leave of absence status. Her husband kept his green card alive. All right. And I'm struggling with the notion of how, at that point in time, when they left for Singapore, there was an abandonment of their habitual residence in Massachusetts. Now, that leaves the possibility that there's an abandonment at a later date. We can get to that. But I can't see how, I can't see on what you base the claim that in June of 2012, there was an abandonment of their habitual residence in Massachusetts. So if Your Honor would indulge me, I will explain where the objective facts indicate that there was an abandonment of their U.S. habitual residence in June of 2012. And this is all part of the record. Obtaining a job in Singapore through a Singapore entity is evidence of abandonment. Obtaining tenants for your property. Excuse me. Let me take it one thing at a time. Obtaining a job in Singapore. Correct. Is there any evidence that he asked to be relocated? No. Any evidence that she asked him to arrange to be relocated? No. So he didn't go out and obtain a job in Singapore. His employer asked him to relocate. That's the state of the record. I do believe that's correct, Your Honor. Okay. Go ahead. They obtained tenants for their property. The properties have remained under leases continuously since June of 2012. They filed a tax return. Wait a minute. Excuse me. What is that evidence of? Is that evidence of one way or the other of abandonment? I believe that if you state that you intended to reside in a place, you represent to the court that that is your address, and then you file a federal and a Massachusetts tax return that says something different, I think that at a minimum we have to look at that. She made two separate statements. I thought we were talking about the leases. The leases, well, the rental income shows up on their tax returns, and the facts are that the properties have remained continuously leased. They are to this day. Leased, yes, leased. That means that temporarily they're not occupying it. There's no requirement under our First Circuit case law that you have to sell your home. You can have an investment property and still live abroad and still develop a new residence. Well, with all respect, I think Judge Torley's point, which I share, is that renting the properties on one-year leases and leasing housing in Singapore is at most equally consistent with your theory of the case and your opponent's theory of the case. It's exactly what someone would do if they were going to relocate temporarily for three years with the intention of returning. It's also what someone might do if they were going to relocate permanently, although you might think they would put the property up for sale or lease it for longer periods if they intended to leave Massachusetts permanently. Here's what's not consistent. But it's certainly not evidence of abandonment. Here's what's not consistent. Filing U.S. tax returns, and this is Appendix 33. The copy is difficult to read. I do have a more legible copy that was part of the record. But she signs under the pains and penalties of perjury saying that she left Massachusetts, but it is not her residence as of May 31, 2012, and indicates that her address is 50 Coronation Road in Singapore. But that's absolutely true. We're talking about, as I said to you, the problem in this case, or what I'd like you to convince me of is it seems to me that the district court has confused residence with habitual residence. Her residence at that time was Singapore. No one is disputing that. She would have been prevaricating to the tax authorities if she had said differently. If they had sent her a request for information about her return, it would have to be to the Singapore address. Well, you've asked me to convince you otherwise, and I would like to, which is that I believe that the facts of packing up all of your belongings, all of their belongings, 4,000 pounds, and that's part of the record as well, shipping that over to a new country, and discussing, and that is again part of the record, that you may continue to live abroad, including London and Copenhagen, securing, investigating schools and preschools. Her affidavit says, I never intended to have the children go to preschool. But there's an email that she sent to the father saying, thanks for the information. I've investigated preschools. I'm looking to enroll our children in preschools. Renting a home, moving all of your belongings, investigating schools, enrolling your oldest daughter in education class, those are evidence of establishing habitual residence. It doesn't hint, Coach says, it doesn't. Thank you very much. Your time is up. You have one minute. Yes, Your Honor, thank you. Very briefly, in the case of Moses v. Moses, a Ninth Circuit case that this circuit has cited with approval and discussed at length in the recent opinion in Darin, Honorable Judge Kaczynski talks about the phenomenon of the academic year abroad and how that particular phenomenon would be really stifled if parents were, had to be so concerned that sending a child to study abroad would result in a legal effect that, in effect, they could lose their child. I just want to briefly submit to the Court that I believe that this is not all that different. Is that case of your brief? Yes, Your Honor. Thank you. And working abroad for the improvement of one's career is something that parents should be able to agree to without fearing that they would not be able to come back from that country with their children, unless the Court has any other questions. Counsel, I just have one question, which shouldn't be charged against your time. Am I correct in believing that, pending the decision that we reached today, that the child remains in Massachusetts? Yes, except that I believe at the current moment the mother is staying in Connecticut with her mother. In other words, the District Court judgment has been stayed? Has been stayed, yes, Your Honor. Thank you.